## OLIVA v. GOLETA LEMON ASS'N.

### No. 3935–H–Civ.

District Court, S. D. California.

July 10, 1945.

David C. Marcus, of Los Angeles, Cal., for plaintiff.

Stanley N. Barnes, of Los Angeles, Cal., for defendant.

HOLLZER, District Judge.

This is an action for damages for personal injuries alleged to have been caused by defendant's negligence. Jurisdiction is conceded by reason of the fact that plaintiff is a citizen and resident of the Republic of Mexico, while defendant is a citizen and resident of the State of California and the amount in controversy exceeds $3,000, exclusive of interest and costs.

Defendant, Goleta Lemon Association, hereinafter referred to as defendant, by its answer has raised several issues. One of these defenses is to the effect that at the time and place of the accident involved herein plaintiff was an employee of said defendant acting within the scope of his contract of employment, and that his exclusive remedy against said defendant, if any, is under the provisions of the Work-men's Compensation Act of the State of California, St.Cal.1937, p. 265, § 3201 et seq.

A pre-trial was ordered. During the course of and as the result of such hearing the parties entered into a stipulation respecting the facts relevant to the aforementioned defense. Such stipulation as amended establishes the relevant facts to be as hereinafter set forth.

Under date of November 10, 1943, with the approval of the Secretary of Labor of Mexico plaintiff had entered into a contract with the United States through the Farm Security Administration. Under said agreement the United States obligated itself to contract with employers of farm labor in this country so as to provide work for Mexican nationals, including plaintiff, and pursuant to the provisions thereof the worker was provided with transportation, food, lodging, subsistence and employment. One of said provisions read: "The worker shall enjoy, as regards occupational diseases and accidents, the same guarantees enjoyed by other agricultural workers under the laws of the United States of America."

Under date of October 4, 1943, defendant had entered into a contract with the United States through the Regional Director of the Office of Labor, War and Food Administration to employ 175 agricultural workers between November 1, 1943 and April 30, 1944. Besides prescribing minimum subsistence allowance and minimum wages, said agreement required the employer to provide board and lodging (conditionally up to January 1, 1944 and unconditionally thereafter), also to pay all costs of transporting workers between the destination points in the United States (here Goleta) and the place or places at which the workers were to perform their labor, also the cost of returning the workers to such destination point, and further the employer was obligated to provide workmen's compensation insurance for all workers employed during the period of employment.

In addition, said contract required the employer to make available to the workers and their families, without charge, such shelter facilities as were owned by the employer and not otherwise occupied during the period of employment. Said agreement also contained a provision reading:

242

"The workers shall be entitled to the benefit and protection of all applicable child labor, and other laws and regulations of the Government and of the State or States in which the work is performed, and the employer shall provide workmen's compensation insurance for all workers employed hereunder during the period of employment."

Subsequent to executing said last-mentioned contract, defendant entered into an agreement with Citrus Emergency Harvest, Inc., hereinafter referred to as "Citrus". Said agreement designated defendant as employer and under its terms Citrus guaranteed the performance of all cooperative employment agreements, and was authorized to allocate workmen among various citrus growers in California. One of the provisions of said contract with Citrus read: "Employer agrees that it will provide and maintain workmen's compensation insurance for each worker employed under this contract and will upon request furnish Corporation (Citrus) with sufficient information to show that all the workers are covered by the terms of the policy."

At the time of the accident in question, defendant was maintaining as one of the places of abode for Mexican nationals, as required by its contract with the United States, a certain area known as "Normandie Auto Court". Said area was located adjacent to and westerly of U. S. Highway 101, near Goleta, California. Defendant had selected said area as plaintiff's place of abode, and at the time of and prior to said accident plaintiff resided in one of the cabins located within said area. His lodging and food were paid for out of his wages. Between said cabins and said highway were a restaurant and kitchen, also an ice-house and a store, said restaurant and kitchen having been converted to said purpose by defendant to provide food for the Mexican nationals, including plaintiff.

For sometime prior to the day of the accident, and up to March 27, 1944, plaintiff had acted under defendant's control in working upon various ranches and defendant had paid his wages. But for said accident plaintiff also would have worked for defendant on March 28, 1944. In fact sometime subsequent thereto plaintiff resumed working for defendant.

At the time involved herein defendant owned seven vehicles which were used each day to transport Mexican nationals, including plaintiff, from their place of abode to their place of work, such transportation being furnished in accordance with defendant's contract before mentioned. On the day of the accident plaintiff was scheduled to board one of said vehicles, but not the one which caused his injury. On the morning of March 28, 1944, one of defendant's employees was driving one of said vehicles, and about fifteen Mexican nationals, employed by defendant and working under said driver, were riding therein. For the purpose of picking up about thirteen more Mexican nationals the driver of the last-mentioned vehicle drove the same to said Normandie Auto Court, more particularly onto. a portion of the premises comprising said Court adjoining said highway and in the vicinity of said restaurant and kitchen, where many of the Mexican nationals were waiting for transportation to their place of work.

While engaged in this operation, the driver backed said vehicle so as to cause the same to strike and injure plaintiff. At that time the latter was standing or walking in the vicinity of the aforementioned kitchen and store, and was then waiting to be picked up by one of said vehicles and to be transported therein to his place of work. All workers residing at said Normandie Auto Court were picked up daily in front of the same, and this was the general area where it had been customary to pick up plaintiff. Said accident occurred at the approximate time when plaintiff and other Mexican nationals residing at said court customarily were picked up to be taken to work. Defendant reported plaintiff's injury to the State Compensation Insurance Fund, its compensation insurance carrier.

A pre-trial order was entered in conformity with the aforementioned stipulation. Said order adjudges that one of the issues to be determined herein is whether this court has jurisdiction of the action at bar. The principal question to be decided upon this issue, therefore, is whether plaintiff's remedy for the injury complained of is restricted to a proceeding before the Industrial Accident Commission of the State of California.

Plaintiff contends that the facts hereinbefore set forth do not bring this case within the jurisdiction of said Commission. In support of this contention plaintiff relies upon a recent decision rendered by a

District Court of Appeal of said state, in the case of Garcia v. Yedor, 154 P.2d 1.

As disclosed by the opinion filed in the case cited, the only question there determined was whether the amended complaint stated a cause of action. The trial court had ruled that said complaint showed that complainant had been injured upon the premises of his employer, and had rendered judgment on the pleadings that his only remedy was before the Industrial Accident Commission, in accordance with the Workmen's Compensation Act. In reversing that judgment the Court there said:

"The amended complaint alleges that defendants operated a die casting plant, * * * ; that the plaintiff was an employee of the defendants; that the plaintiff entered the plant before it was time for him to go to work, and went to a part of the plant where there was located a die casting machine operated by another employee * * * to visit with that employee; whereupon the machine was negligently started, thereby spattering molten metal into plaintiff's eye and upon parts of his body to his consequent injury and damage.

"Judgment for defendants was rendered upon the assumption that the plaintiff employee having been injured upon the premises of the employer, his only remedy was before the Industrial Accident Commission * * *. This would be true if the only inference which may be drawn from the complaint is that the plaintiff was injured in the course of his employment.

"With certain exceptions, it is settled law in this state that one injured coming or going to his work is not injured in the course of his employment. These exceptions are discussed in Freire v. Mattson N. Co., 19 Cal.2d 8, 118 P.2d 809, 811. In that case the employee was injured while on his way to work, and while he was upon a bulkhead leading to a pier * * *. It was held that while the employee was not under the employer's control or management at the time of his injury, the bulkhead was the 'means of access' to the pier from which the employee had to embark to reach his place of employment, and his remedy was under workmen's compensation. A somewhat similar situation existed in Judson Mfg. Co. v. Industrial Acc. Comm., 181 Cal. 300, 184 P. 1, where the employee was injured while using a path not controlled by the employer along a railroad right-of-way. * * *

"In the present case, taking the complaint by its four corners, as we must, the inference may be drawn that the plaintiff was not injured while following a necessary route on his way to work, but was hurt when he was engaged upon a venture of his own. The fact that the accident was caused by a fellow employee, upon the employers' premises, is not controlling. The test is whether or not the particular act involving accident and injury was reasonably contemplated by the employment. Whiting-Mead C. Co. v. Industrial Acc. Comm., 178 Cal. 505, 173 P. 1105, 5 A.L.R. 1518. * * *

"Under the facts alleged in the complaint the injury was occasioned while the employee was at a place and doing something not reasonably contemplated by his employment. The conditions of compensation do not concur, and the right in the plaintiff to recover is not exclusively under workmen's compensation."

Our analysis of the opinion from which we have just quoted persuades us that the facts upon which the same was based are readily distinguishable from those presented here. Furthermore certain portions of that opinion sustain the position taken by the defendant herein. In the case cited the employee was making a social visit and was at a place where he was not expected to be at the time of the injury complained of. As the court there pointed out, the employee "was not injured while following a necessary route on his way to work, but was hurt when he was engaged upon a venture of his own." In other words, as the court there expressed it, "the injury was occasioned while the employee was at a place and doing something not reasonably contemplated by his employment."

On the other hand in the action at bar the facts disclose that plaintiff was injured while following a necessary route on his way to work, and while waiting to be transported by his employer to his place of work. Here the employee was at a place and doing something reasonably contemplated by his employment.

The same opinion refers with approval to the cases of Judson Mfg. Co. v. Industrial Acc. Comm., 181 Cal. 300, 184 P. 1, and Freire v. Matson N. Co., 19 Cal.2d 8,

118 P.2d 809. In the first of these two decisions the court upheld an award by the Industrial Accident Commission. There it appeared that the employee was killed while walking on a path leading from the end of a public street to the gate of his employer's factory. The path was on a railroad right-of-way and was neither owned nor controlled by the employer. The court there awarded compensation upon the grounds that it was the necessary means of access to the employer's premises, required by the employer and contemplated in the employment, and that as between the employer and his employee it was in practice a part of the employer's plant, and hence that such injury and death arose out of and occurred in the course of the employment.

In the remaining case, the facts showed that the employee of a steamship company was injured while on his way to work and while he was on a bulkhead leading to a pier assigned to the employer for the docking of its ships, and from which pier he was to embark to reach his place of employment. The bulkhead was under the control of the Harbor Commission, but it constituted the only means of reaching said pier. The trial court held that the injured employee's remedy was under the Workmen's Compensation Act. In affirming this ruling, the Supreme Court of California said, in part (19 Cal.2d 8, 118 P.2d 809, 811, 812):

"It is well settled that while an employee is ordinarily not entitled to workmen's compensation for an injury sustained in going to or departing from work, he is entitled to compensation if the employment creates a special risk, for injuries sustained within the field of that risk. Such a risk may attend the employee as soon as he enters the employer's premises or the necessary means of access thereto, even when the latter is not under the employer's control or management. (Citing many California cases)

"It is evident from the facts in the instant case that the bulkhead is 'the means of access' to the pier 'required and authorized by the company', that it is 'in fact, dominant as to user in the employer, servient to its purposes, and intimately associated with its plant as a part of its necessary establishment.' Judson Mfg. Co. v. Industrial Acc. Comm., supra, 181 Cal. page 301, 184 P. page 1. * * *

"In the instant case the plaintiff by reason of his employment was subjected to the risks arising on the bulkhead peculiarly and to an abnormal degree. At the time of his injury plaintiff was upon the bulkhead solely in the line of his duty as an employee. See Judson Mfg. Co. v. Industrial Acc. Comm., supra * * *. He was obliged to be there on the morning of the accident before 8 o'clock in readiness to go on the pier and thence to his ship at that time. The injury to plaintiff occurred upon the only practical means of access to the employer's premises. The hazard to which he was subjected when he arrived upon the bulkhead was created by his employer, its agents and those with whom it did business. See State Comp. Ins. Fund. v. Industrial Acc. Comm. [194 Cal. 28, 227 P. 168.] Under these circumstances, the hazard was one directly connected with the employment and, under the authority of the cases cited, the injury was one arising out of and in the course of plaintiff's employment.

"The fact that the accident happened some minutes before plaintiff was to begin work is immaterial. Judson Mfg. Co. v. Industrial Acc. Comm., supra. See Cromwell v. Los Angeles Ry. Corp. [102 Cal. App. 499, 283 P. 375.] 'The employment contemplated is entry upon and departure from the premises as much as it contemplated his working there, and must include a reasonable interval of time for that purpose.' Cudahy Packing Co. v. Parramore, supra, 263 U.S. [418, 423–426], 44 S.Ct. [153], 68 L.Ed. 366, 30 A.L.R. 532."

In the present suit, applying the principles announced in the Judson Manufacturing Co. and the Freire cases, it may be noted that here the employee was injured while at a place which was owned and controlled by the employer, which was the necessary means of access to the place of work, required by the employer and contemplated in the employment, and that as between the employer and his employee said place was in practice a part of the employer's plant, and hence plaintiff's injury arose out of and occurred in the course of the employment.

To the same effect see Larson et al. v. Industrial Acc. Comm., 193 Cal. 406, 224 P. 744; Pacific E. I. Co. v. Industrial Acc. Comm., 77 Cal.App. 424, 246 P. 825; Cudahy Packing Co. v. Parramore, 263 U.S. 418, 423–426, 44 S.Ct. 153, 68 L.Ed.

366, 30 A.L.R. 532; and Bountiful Brick Co. v. Giles, 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507, 66 A.L.R. 1402.

In the Larson case awards had been made by the Commission to certain employees and also to the heirs of certain deceased employees of one Eric Larson. The facts there disclosed that the injured employees were employed on a ranch and were required to accept the employer's accommodations, including a bunkhouse, for board and lodging, such accommodations being part of their pay. One of the employees had finished his day's work and was waiting for supper in said bunkhouse, when he was injured through an explosion caused by a chore man throwing coal oil on a bunk house fire which he was hired to build. Another employee, killed by the same explosion, had lived with his family in a cottage on the ranch, sometimes ate at the bunkhouse and had gone there after work to give orders to men constituting a night shift. Affirming said awards, the Supreme Court of California said, in the course of its opinion (224 P. 745):

"Almost the same contentions that are now made by these petitioners were presented for our consideration in a case only recently decided. Associated Oil Co. v. Industrial Acc. Comm. [191 Cal. 557], 217 P. 744. The question there submitted for decision was whether injuries occurring about and in an employer's bunkhouse, situated on the employer's premises, sustained by employees during their leisure hours, while reasonably using the bunkhouse in a proper manner during intermissions from work, are within the purview of the Workmen's Compensation Act. We held that employees are in the course of their employment while properly spending their time, when off duty, in the bunkhouse furnished by the employer for such purpose, and at which the men are compelled to live. We said: 'The general rule appears to be that when the contract of employment contemplates that the employees shall sleep upon the premises of the employer, the employee, under such circumstances, is considered to be performing services growing out of and incidental to such employment during the time he is on the premises of the employer. (1 Schneider Workmen's Compensation Law, p. 608, par. 279.) The test is whether or not the workman is given a choice in the matter and is as free as possible to come or go as he pleases.'

" * * * The facts of the case we are now considering present a situation in which 'the employer places the employee in such circumstances that his time is never his own, where he has no discretion as to where he shall sleep and where he shall eat. Under such circumstances the workman must be considered in the employ of the employer all of the time, or at least performing a service which is incidental to the employment he is engaged in.' Holt Lumber Co. v. Industrial Comm., 168 Wis. 381, 170 N.W. 366; Honnold on Workmen's Compensation, § 109, p. 373."

In the second of the four cases just cited, it appeared that an employee was injured a few minutes before working hours while passing over the working premises of the employer to obtain breakfast at the employer's cookhouse where the employees were required to take their meals. Holding that such injury was sustained in the course of and grew out of the employment, the court in the course of its opinion said (246 P. at page 826): "As said in Judson Mfg. Co. v. Industrial Acc. Comm., 181 Cal. 300, 302, 184 P. 1, 'the right to compensation is by no means restricted to those cases where the injury occurs while the employee is actually * * * manipulating the tools of his calling'; and, where it appears, as here, that the injury occurred on the working premises of the employers, that the employee, while not actually performing the work for which he was employed, was thereon for a purpose contemplated, and, by fair inference from the testimony, required by them at a time, which, though not within his specified working hours, closely preceded their commencement, the situation is one in principle within the decision in State Comp. Ins. Fund v. Industrial Acc. Comm., 194 Cal. 28, 227 P. 168, and the injury was reasonably held to have been sustained in the course of and to have grown out of the employment."

In the Parramore case, supra, the United State Supreme Court held that an employee was entitled to an award under the Utah Workmen's Compensation Act, where the facts showed that the employee while on his way to work was killed by a locomotive at a public crossing on a railroad adjacent to his employer's factory, and where it appeared it was necessary for the

246

employees to cross the tracks in order to get to the place of work and where they, in effect, were invited by the employer to do so. In the course of its opinion, the Supreme Court there said (263 U.S. at page 423, 44 S.Ct. at page 154, 68 L. Ed. 366, 30 A.L.R. 532): "Workmen's Compensation legislation rests upon the idea of status, not upon that of implied contracts; that is, upon the conception that the injured workman is entitled to compensation for an injury sustained in the service of an industry to whose operations he contributes his work as the owner contributes his capital—the one for the sake of the wages and the other for the sake of the profits. The liability is based, not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment because of and in the course of which he has been injured."

Again in 263 U.S. at page 426, 44 S.Ct. at page 155, 68 L.Ed. 366, 30 A.L.R. 532, the court said:

"Here the location of the plant was at a place so situated as to make the customary and only practicable way of immediate ingress and egress one of hazard. Parramore could not, at the point of the accident, select his way. He had no other choice than to go over the railway tracks in order to get to his work; and he was in effect invited by his employer to do so. And this he was obliged to do regularly and continuously as a necessary concomitant of his employment, resulting in a degree of exposure to the common risk beyond that to which the general public was subjected. The railroad over which the way extended was not only immediately adjacent to the plant, but, by means of switches, was connected with it, and in principle it was as though upon the actual premises of the employer.

"We attach no importance to the fact that the accident happened a few minutes before the time Parramore was to begin work, and was therefore, to that extent, outside the specified hours of employment. The employment contemplated his entry upon and departure from the premises as much as it contemplated his working there, and must include a reasonable interval of time for that purpose." (Citing cases.)

In the Bountiful Brick Co. case it was held that where an employee is injured while passing with the express or implied consent of the employer to or from his work over the premises of another, in such proximity and relation to the premises of the employer as to be in practical effect a part of them, the injury is one arising out of and in the course of the employment. In affirming a judgment of the Supreme Court of Utah, which had affirmed an award of compensation by the Industrial Commission of that state, the United States Supreme Court said (276 U.S. at pages 158, 159, 48 S.Ct. at page 222, 72 L.Ed. 507, 66 A.L.R. 1402):

"Liability was constitutionally imposed under the Utah Compensation Law if there was a causal connection between the injury and the employment in which Giles was then engaged substantially contributing to the injury. Cudahy [Packing] Co. v. Parramore, 263 U.S. 418, 423–425, 44 S.Ct. 153, 68 L.Ed. 366, 30 A.L.R. 532. And employment includes not only the actual doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done. If the employee be injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises, the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance. In other words, the employment may begin in point of time before the work is entered upon and in point of space before the place where the work to be done is reached. Probably, as a general rule, employment may be said to begin when the employee reaches the entrance to the employer's premises where the work is to be done; but it is clear that in some cases the rule extends to include adjacent premises used by the employee as a means of ingress and egress with the express or implied consent of the employer." (Citing cases) * * *

"The present case, though it comes near the border line, falls within the principle of the Parramore case. * * * No definite line of travel being indicated by the company or followed by the employees, who, with the company's full knowledge and acquiescence, habitually crossed wher-

ever they saw fit, it results that, however the crossing was made, the risk thereby incurred was reasonably incidental to the employment and became annexed as an implied term thereof."

Similarly, it may be said upon the record before us that plaintiff, a citizen of Mexico, was in the United States solely by virtue of a contract of employment made with him, that pursuant to the terms of said contract he was provided with lodging, subsistence, employment and also transportation by defendant, his employer, between the place of his lodging and the location at which he was to perform his labor. Likewise, the facts here disclose that plaintiff sustained the injury complained of upon premises where under the terms of his employment he was required to be, not only for his lodging and subsistence, but also for the purpose of being transported to his place of work, that the scene of the accident was intimately associated with the employer's plant as a part of its necessary establishment; also that at the time of his injury plaintiff was upon said premises solely in the line of his duty as an employee; that he was obliged to be there on the morning of the accident in readiness to go to his place of work; and that the hazard to which he was subjected at the scene of the accident was created by his employer.

In other words, it appears in the instant suit that plaintiff was properly spending his time on premises furnished by his employer for such purpose, and that the injury complained of occurred on said premises; and also that plaintiff, while not actually performing the work for which he was employed, was at the time of said accident on said premises for a purpose contemplated and by fair inference required by his employer at a time which, though not within the specified working hours, closely preceded their commencement.

Accordingly we conclude that plaintiff was injured as the result of a hazard directly connected with his employment, and that his injury was one arising out of and in the course of his employment.

We therefore hold that plaintiff's remedy is restricted to a proceeding before the Industrial Accident Commission of the State of California, and that this Court lacks jurisdiction of the action at bar.