[No. B018725. Second Dist., Div. Seven. Dec. 17, 1986.]

KEVIN E. GREEN, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
ANDROID AMUSEMENT CORPORATION, Respondents.

1420

COUNSEL

Smith & Warren and R. William Smith for Petitioner.

Stockwell, Morris, Anderson & Harris, John D. Tobin, Richard W. Younkin, William B. Donohoe, Alvin R. Barrett and Charles E. Finster for Respondents.

OPINION

JOHNSON, J.—This case presents the issue of whether applicant's claim for workers' compensation benefits is barred by the going and coming rule or whether his injury, which occurred while he was traveling home to prepare for a trade show later that day, comes within the special mission exception

to that rule. We conclude the injury is compensable as it resulted from his performance of a special mission. Therefore, we will annul the decision of respondent Workers' Compensation Appeals Board (Board) from which applicant sought review.

### FACTS AND PROCEEDINGS BELOW

Kevin E. Green (applicant), a technician who serviced robots for Android Amusement Corporation, sought compensation for an ankle injury sustained in a collision between his motorcycle and a car which occurred as he traveled from his workplace to his home on October 18, 1983.

Applicant was required to arrive at the employer's premises in Monrovia before 10 a.m. each day and was free to leave whenever his duties were completed. In addition, approximately once or twice a month he was required to work at trade shows. Although he wore work clothing at the employer's premises, he was required to wear a suit or sport coat when attending the trade shows, both for the sake of appearance and to conceal electronic equipment associated with the robots.

While at work on October 18, applicant was informed by his supervisor he was to work at a trade show in Hollywood that evening. The supervisor told applicant he would pick him up in the company van at applicant's home at 6 p.m. The supervisor drove to his own residence in the van to change clothes and to eat; he then planned to pick up applicant and stop at the shop to pick up a robot before proceeding to the show. Applicant left work for home on his motorcycle, intending to eat, shower, and obtain suitable clothing for the trade show. The applicant owned only two coats suitable for wear at the show, both of which were at the cleaners, so he intended to proceed home and then borrow his girlfriend's car to go to the cleaners as he could not transport the suit while driving his motorcycle. The collision occurred halfway between the workplace and his residence, approximately 10 to 15 minutes after he left work.

The workers' compensation judge (WCJ) found that applicant sustained an injury arising out of and occurring in the course of his employment. He determined the injury was compensable because applicant was traveling home to obtain a passenger vehicle so he could get his suit from the cleaners, change into the suit, and later meet his supervisor at applicant's home as arranged.

The Board granted reconsideration, determined applicant's trip did not constitute a special mission, and found applicant did not sustain injury arising out of and occurring in the course of employment. In its decision

after reconsideration the Board stated: "Applicant's trip was a commute. It was undertaken at or near his regular commute time and there is no dispute that he was travelling from workplace to home. As such there was nothing extraordinary about that trip. The activity being performed at the time of injury was not contemplated as part of the employment relationship. That relationship would have resumed when the employer picked applicant up some two hours after the time of the accident. There is no evidence that the employer had knowledge of or requested the employee to undertake a trip to the cleaners via applicant's home. [¶] The logical conclusion of applicant's contention would be that any injury incurred while preparing for work or while buying clothes necessary for work would fall within the special errand exception and would be compensable. That would be an impermissably [*sic*] broad interpretation of the exception."

## DISCUSSION

The going and coming rule precludes compensation for injuries suffered during a local commute to or from a fixed place of business at fixed hours absent special or extraordinary circumstances. (*Hinojosa* v. *Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150, 157 [104 Cal.Rptr. 456, 501 P.2d 1176].) The rule, however, is subject to many exceptions. (*Dimmig* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860, 866 [101 Cal.Rptr. 105, 495 P.2d 433].)

Among the various exceptions to the going and coming rule is the special mission or special errand exception. (*Hinojosa* v. *Workmen's Comp. Appeals Bd., supra,* 8 Cal.3d at p. 159.) "'An injury suffered by an employee during his regular commute is compensable if he was also performing a special mission for his employer.' [Citation.] The employee's conduct is 'special' if it is 'extraordinary in relation to routine duties, not outside the scope of employment' (*Schreifer* v. *Ind. Acc. Com.* (1964) 61 Cal.2d 289, 295 . . .)." (*Santa Rosa Junior College* v. *Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 345, 354, fn. 13 [220 Cal.Rptr. 94, 708 P.2d 673].)

In *Schreifer* v. *Industrial Acc. Com.* (1964) 61 Cal.2d 289 [38 Cal.Rptr. 352, 391 P.2d 832], the Supreme Court held a deputy sheriff who was injured while driving to the station from his home was engaged in a special mission. Although the deputy's shift on the day of the accident had been previously scheduled as 7 p.m. to 3 a.m., he received a call from his supervisor at 1 p.m. on the day of the accident instructing him to report for duty as soon as possible. He testified that "this was not the first time he had received a call to come in early." (*Id.,* at p. 290.) The court pointed out "[t]he fact that a particular mission is encompassed within the terms of hire, even contemplated at the time employment began, is not determi-

native" of the question whether an employee's trip constituted a special mission. (*Id.*, at p. 295.) The court concluded the employee's trip was "extraordinary in relation to routine duties, not outside the scope of the employment" (*ibid.*), and hence the injury was compensable.

Other courts have similarly awarded compensation under the special mission exception where the injury was sustained during travel to or from the regular worksite at an unusual hour as required by the employer. (*Safeway Stores, Inc.* v. *Workers' Comp. Appeals Bd.* (1980) 104 Cal.App.3d 528 [163 Cal.Rptr. 750] [data processing clerk worked overtime to help complete semiannual inventory]; *L. A. Jewish etc. Council* v. *Ind. Acc. Com.* (1949) 94 Cal.App.2d 65 [209 P.2d 991] [librarian requested to report to library at unusual hour to perform usual duties].)

In situations analogous to the one before us, our courts have held commuting injuries were within the special mission exception where the employee attended a particular function or performed a task required by his employer at a place other than that of his routine duties, even where the function or task was a regular component of his job.

Following *Schreifer, McGinty* v. *Workmen's Comp. App. Bd.* (1968) 266 Cal.App.2d 280 [71 Cal.Rptr. 877] held compensable an injury suffered by an employee while en route home from a required monthly evening sales meeting which began at the employer's plant and continued at a restaurant. The court determined that the meeting was "'extraordinary in relation to routine duties, not outside the scope of the employment'" (*id.*, at p. 282) and observed, "[I]t is clear the meeting took place during and after petitioner's routine business hours of employment, and it foreordains a conclusion the employer knew and intended the petitioner was to attend the dinner and knew he would go home from the meeting. Petitioner's going to his car and then proceeding to his home did not deviate from the contemplation of the employer, nor was it outside the intention of the employer." (*Id.*, at p. 283.)

Injuries sustained during travel undertaken in order to perform duties within the scope of the employment at off-premises locations were similarly held to be within the special mission exception in *Dauphine* v. *Ind. Acc. Com.* (1943) 57 Cal.App.2d 949 [135 P.2d 644], in which the employee performed inspections of public properties three or four times per month, and in *Fenton* v. *Industrial Acc. Com.* (1941) 44 Cal.App.2d 379, 380 [112 P.2d 763], in which a relief worker was "sometimes" required to make field visits.

In *Baroid* v. *Workers' Comp. Appeals Bd.* (1981) 121 Cal.App.3d 558, 568-574 [175 Cal.Rptr. 633], Division One of this court distinguished

*Schreifer* and held an injury sustained on the way to work would be non-compensable if the employee had been informed two days before the incident he would be required to report for duty several hours earlier than his usual shift. The court found it significant the nature of the employment, supplying equipment to oil well drilling operations, required the employee to be on 24-hour call and the work he was to perform was not different from or special in relation to his usual work. (*Id.,* at p. 568.) In contrast to that situation, here applicant was injured while traveling to prepare for duties which were different from his usual work and were to be performed at a different location and time than his usual duties. (Cf. *McGinty* v. *Workmen's Comp. App. Bd., supra,* 266 Cal.App.2d at pp. 282-283; *Dauphine* v. *Ind. Acc. Com., supra,* 57 Cal.App.2d 949; *Fenton* v. *Industrial Acc. Com., supra,* 44 Cal.App.2d at pp. 380-381.) As the court pointed out in *Baroid,* in cases holding commuting injuries compensable, "[T]he common thread is that something about the location of the work, the nature of the work, or the hour the work was performed deviated from that which was the customary, fixed or usual norm." (*Baroid, supra,* 121 Cal.App.3d at p. 569.)

▮ Under the guidance of the above authorities, we conclude applicant was engaged in a special mission at the time of his injury. *Santa Rosa Junior College* v. *Workers' Comp. Appeals Bd., supra,* 40 Cal.3d 345 does not compel a different conclusion. In that case the Supreme Court held a college instructor's commute from the college to his home, where he graded papers and prepared lessons, was not a special mission or errand. Applying the *Schreifer* definition of special mission, the court concluded, "In relation to his routine duties, there was nothing 'extraordinary' about his commute . . . ." (*Id.,* at p. 354.) However, unlike the routine commute in *Santa Rosa Junior College,* in which the employee took work home for his own convenience (*id.,* at pp. 355-357), applicant's travel was undertaken in preparation for a trade show which applicant was required to attend at a location other than the employer's premises.

It is no impediment to applicant's recovery he was traveling home before attending the trade show, rather than en route to the show, at the time of the accident. ▮ A special activity within the course of employment which is "reasonably undertaken at the request or invitation of the employer" is a special mission. (*Dimmig* v. *Workmen's Comp. Appeals Bd., supra,* 6 Cal.3d at p. 868.) ▮ In *Hinojosa* v. *Workmen's Comp. Appeals Bd., supra,* 8 Cal.3d 150, 157, the Supreme Court explained that although the going and coming rule precludes coverage during an ordinary commute, an employer's special request or requirement "removes the transit from the employee's choice or convenience . . . restoring the employer-employee relationship." Since applicant wore work clothing on the employer's prem-

ises and the employer required he wear a coat to the trade show, it was necessary for him to return home to change his clothing for the show. The employer, furthermore, told applicant he would pick applicant up at his home to drive him to the trade show. Thus, applicant's trip was undertaken at the employer's request and was for the benefit of the employer. (*Dimmig* v. *Workmen's Comp. Appeals Bd., supra*, 6 Cal.3d at pp. 868-869; *Schreifer* v. *Industrial Acc. Com., supra*, 61 Cal.2d at pp. 294-295.) Under these circumstances applicant's trip home in preparation for the evening trade show was a special mission. (*Ibid.*)

## DISPOSITION

The December 17, 1985, decision after reconsideration of the Workers' Compensation Appeals Board is annulled, and the matter is remanded to the Board with directions that the Board deny respondent employer's petition for reconsideration.

Thompson, J., concurred.

**LILLIE, P. J.**—I respectfully dissent. I would affirm the decision of the Workers' Compensation Appeals Board. In my view, the applicant's claim for workers' compensation benefits is barred by the "going and coming rule."

I agree that an injury occurring during travel to or from a "special mission," as defined by the authorities relied upon by the majority, is compensable. (*Schreifer* v. *Industrial Acc. Com.* (1964) 61 Cal.2d 289, 295 [38 Cal.Rptr. 352, 391 P.2d 832] [deputy sheriff requested to report outside of regular hours]; *Safeway Stores, Inc.* v. *Workers' Comp. Appeals Bd.* (1980) 104 Cal.App.3d 528, 535 [163 Cal.Rptr. 750] [six hours overtime to help employer with inventory]; *McGinty* v. *Workmen's Comp. App. Bd.* (1968) 266 Cal.App.2d 280, 282 [71 Cal.Rptr. 877] [compulsory sales meeting and dinner after hours]; *L.A. Jewish etc. Council* v. *Ind. Acc. Com.* (1949) 94 Cal.App.2d 65, 68 [209 P.2d 991] [librarian's inspection and discussion of purchase of books before work hours]; *Dauphine* v. *Ind. Acc. Com.* (1943) 57 Cal.App.2d 949, 953 [135 P.2d 644] [fire warden's visit to and inspection of public lands off premises]; *Fenton* v. *Industrial Acc. Com.* (1941) 44 Cal.App.2d 379, 381 [112 P.2d 763] [interview at home of relief applicant before office hours].) However, I question that the trade show here is the kind of "special errand" or "special mission" that falls within the exception to the "going and coming rule" as being "extraordinary in relation to routine duties" (*Schreifer* v. *Industrial Acc. Com.* (1964) 61 Cal.2d 289, 295 [38 Cal.Rptr. 352, 391 P.2d 832]; *Santa Rosa Junior College* v. *Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 345, 354, fn. 13 [220

Cal.Rptr. 94, 708 P.2d 673]), which rests on the concept of "out-of-the-ordinary business need" (*Safeway Stores, Inc.* v. *Workers' Comp. Appeals Bd.* (1980) 104 Cal.App.3d 528, 537, fn. omitted [163 Cal.Rptr. 750]) or "emergency or special circumstances" (*Baroid* v. *Workers' Comp. Appeals Bd.* (1981) 121 Cal.App.3d 558, 571 [175 Cal.Rptr. 633]).

As part of his regular work, Green was required to and did work at trade shows once or twice each month, and it does not appear to me that his employer's need for his services on this occasion was in any way unusual or extraordinary. However, even if the trade show could be classified as a "special mission," I do not believe that his return home to eat, shower and change his clothes before embarking on it, converts Green's normal commute from his workplace to his home into travel within the "special mission" exception. He would have gone home at or about the same time, on the same route and in the same way whether or not two and one-half hours later he was to go to the trade show; further, it appears to me that Green's return home and intended activities there during the several hours before his employer was to pick him up, were more for the benefit and convenience of Green than a service to his employer.

Had Green's injury occurred either on the way to the trade show from his home or on the way to his home from the trade show, assuming the trade show to be a "special mission," I could agree with my colleagues under the cited authorities, but Green sustained his injury on his regular commute from his workplace to his home long before he was to embark upon such "special mission" and the resumption of the employment relationship. In my view, Green falls squarely within the "going and coming rule" that precludes compensation for injuries suffered "during a local commute en route to a fixed place of business at fixed hours in the absence of special or extraordinary circumstances." (*Hinojosa* v. *Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150, 157 [104 Cal.Rptr. 456, 501 P.2d 1176].)

Green's employment relationship had terminated when he left his workplace at 3:30 p.m. on his motorcycle for his normal 30-minute commute home; it was on this local commute, 24 hours before resumption of this employment relationship, that he was injured. His performance of the "special mission" would not have begun until he was picked up in the van by his employer to start his travel to the trade show. I can no more accept the rationale that, inasmuch as he was in his work clothes and was required to wear a suit or sport coat at the trade show, his act of going home from work at the regular time in the regular manner where he intended to eat, shower and change clothes, somehow transforms his normal commute home into travel within the "special mission" exception, any more than our Supreme Court in *Wilson* v. *Workmen's Comp. App. Bd.* (1976) 16 Cal.3d 181, 184-

185 [127 Cal.Rptr. 313, 545 P.2d 225] and *Santa Rosa Junior College* v. *Workers' Comp. Appeals Bd., supra,* 40 Cal.3d 345, 356, could accept the contention that because of the employer's implicit requirement of work beyond classroom hours, it was implied that the teacher was authorized to take work home in the evenings and do it there, and injury sustained on the teacher's return home from school was compensable.

"'[A]n employee going to and from his place of employment is not rendering any service, and begins to render such service only when [arriving at the place of employment].' (*Ibid.*) The rule also has been explained on the theory that 'ordinarily the employment relationship is suspended from the time the employee leaves his work to go home until he resumes his work'. [Citations.]" (*Santa Rosa Junior College* v. *Workers' Comp. Appeals Bd., supra,* 40 Cal.3d 345, 352.) When Green left his workplace to go home at 3:30 p.m., at or about his regular time, his employment relationship was suspended until he resumed work, and Green would have resumed work that evening when he was to have been picked up by his employer to go to the trade show at 6 p.m.[1]

When injured, Green was simply on his way home on his regular commute. He was not required to nor did he deviate from his usual hours of commute. When injured he had done nothing different as to time or route or mode of travel than he did every day. It was how and when he always went home; and eventually he had to go home whether he then remained at home or was scheduled to be picked up later to go to the trade show. The evidence is clear that when he was injured, Green was traveling from his place of work to his home at or near his regular commute time and there was nothing extraordinary about that trip; riding his motorcycle home from work at the end of the day was not contemplated as part of the employment relationship.

The logical conclusion of the holding of the majority would be to render compensable any injury sustained by Green from the time he left his workplace at 3:30 p.m. to the time he arrived in the safety of his home later that night after attending the trade show. It would necessarily include injury occurring while Green was home—shaving, showering, eating dinner, changing clothes or engaging in any number of domestic activities in prep-

---

[1]Any consideration of Green's need to go to the cleaners to pick up his suit appears to be irrelevant for there is no evidence at all that the employer had knowledge of or requested Green to undertake a trip to the cleaners, and there is no reasonable basis for an implied authorization on the part of the employer that he go to the cleaners (even though he was required to wear a suit or sport coat to the trade show). Further, the proposed trip to the cleaners is in no way involved in the instant case.

aration for his attendance at the trade show, maybe even shopping for a new suit. I agree with the appeals board "That would be an impermissibly broad interpretation of the [special errand or special mission] exception."

I would affirm the board's decision.